IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
M. REZA SALAMI,                       )
                                      )
              Plaintiff,              )
                                      )
     v.                               )     1:25cv405
                                      )
KRISTI NOAM, Secretary of             )
U.S. Department of Homeland           )
Security; KIKA SCOTT, Acting          )
Director of U.S. Citizenship          )
and Immigration Services; US          )
ATTORNEY OFFICE FOR THE               )
MIDDLE DISTRICT OF NORTH              )
CAROLINA; PAM BONDI, US               )
Attorney General; KASH PATEL,         )
Director of the US FBI;               )
USCIS VERMONT SERVICE CENTER,         )
                                      )
              Defendants.             )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

On May 21, 2025, Plaintiff M. Reza Salami filed a pro se complaint against United States Secretary of Homeland Security Kristi Noem, Acting Director of United States Citizenship and Immigration Services ("USCIS") Kika Scott, United States Attorney General Pam Bondi, Federal Bureau of Investigation Director Kash Patel, the United States Attorney's Office for the Middle District of North Carolina, and the USCIS Vermont Service Center seeking a writ of mandamus compelling Defendants to adjudicate his wife's

Form I-130 visa petition.[1]  (Doc. 1.)  Defendants filed a motion to dismiss the complaint (Doc. 10), and Salami responded (Doc. 13).  For the reasons that follow, Defendants' motion to dismiss will be granted and Salami's complaint will be dismissed without prejudice.

I.  BACKGROUND

A United States citizen or lawful permanent resident who seeks to sponsor his foreign spouse for an immigration visa must file a Form I-130 with USCIS, which is under the Department of Homeland Security.  See 8 C.F.R. § 204.1(a)(1).  Salami, a United States citizen, filed the visa petition via Form I-130 on behalf of his wife on March 16, 2022.  (Doc. 1-1 at 7.)  Two weeks later, USCIS issued Salami a Notice of Intent to Deny ("NOID") the visa petition.  (Doc. 11 at 3; Doc. 11-1 ¶ 6.)  According to the declaration of USCIS Charlotte Field Office Director Christopher Heffron, USCIS issued the NOID because of Salami's 2014 arrest for indecent liberties with a child in Guilford County, North Carolina.[2]  (Doc. 11-1 ¶ 6; Doc. 13 at 6.)  Significantly, a conviction for indecent liberties with a child would prohibit

---

[1] The Secretary of the United States Department of Homeland Security is Kristi Noem, not Kristi Noam as identified in Salami's complaint.

[2] In his response to Defendants' motion to dismiss, Salami contends that the NOID "incorrectly referenced an arrest for 'Indecent Liberties with a Child' . . . which was part of a broader campaign of false allegations made by [his] then-wife."  (Doc. 13 at 6.)  He then concedes that the arrest did occur, but the charges were ultimately dismissed.  (Id.)

2

Salami from sponsoring family members through the Form I-130 process. (Doc. 11-1 ¶ 6.) Thus, Salami submitted additional evidence in response to the NOID between April 2022 to October 2024. (Doc. 11 at 3; Doc. 11-1 ¶ 6; see Doc. 1-1 at 8.) In June 2025, USCIS forwarded Salami's petition to the Charlotte Field Office for interview, where it currently awaits interview scheduling. (Doc. 11 at 3; Doc. 11-1 ¶ 7; Doc. 13 at 8.)

The USCIS Charlotte Field Office informed Salami that eighty percent of I-130 visa petitions are completed within 67.5 months. (Doc. 13 at 8.) Salami remains within this timeframe, but he contends that such a delay is "shockingly excessive." (Id.) Notably, his pending Form I-130 petition lists four prior spouses, and he has submitted five Form I-130 petitions based on a fiancé or spousal relationship for five different beneficiaries over a seventeen-year period. (Doc. 11 at 3; Doc. 11-1 ¶ 11; Doc. 13 at 13.) Moreover, Salami was previously charged in a three-count indictment for one count of marriage fraud and two counts of making false statements with respect to a Form I-130 petition, which resulted in his entry into a pretrial diversion program. (Doc. 11 at 4; Doc. 13 at 9.) In his declaration, Mr. Heffron contends that Salami's prior arrest for indecent liberties with a child, criminal history related to marriage fraud, and extensive filing of family-sponsored immigration benefits combine to make adjudication of his Form I-130 petition more complex than the

average Form I-130 petition. (Doc. 11-1 ¶ 13.)

Salami's "emergency complaint" alleges three claims for relief. (See Doc. 1-1.) First, Salami requests a writ of mandamus requiring that Defendants adjudicate his pending Form I-130 visa petition. (Id. at 9-11.) Second, he brings a claim pursuant to the Administrative Procedure Act ("APA"), contending that the adjudication of the petition has been unlawfully withheld or unreasonably delayed. (Id. at 11-12.) Third, Salami seeks a "declaration . . . that Defendants' actions are unconstitutional, violate the [Immigration and Nationality Act ("INA")], and are arbitrary and capricious." (Id. at 12.) At bottom, Salami seeks to expedite the processing of the visa petition because his wife, who is already in the United States and undergoing removal proceedings, hopes to travel internationally to visit her ailing mother. (Id. at 8; Doc. 11-1 ¶ 9.) Salami contends that she cannot legally do so until the approval of the Form I-130 visa petition. (Doc. 1-1 at 8.)

On June 23, 2025, Defendants filed a motion to dismiss Salami's complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (Doc. 10.) Salami timely responded. (Doc. 13.) The motion is now fully briefed and ready for decision.

## II. ANALYSIS

### A. Standard of Review

Salami appears pro se. Thus, his complaint is "not . . . scrutinized with such technical nicety that a meritorious claim should be defeated." Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). But the liberal construction of a pro se litigant's filing does not require the court to ignore clear defects in it, Bustos v. Chamberlain, No. 09-1760, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to become an advocate for the pro se party, Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) (noting that "[d]istrict judges are not mind readers"). Moreover, pro se parties are expected to comply with applicable procedural rules. See Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 715-16 (M.D.N.C. 2020) (requiring pro se plaintiff to comply with the Federal Rules of Civil Procedure).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests the court's subject matter jurisdiction – that is, "the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (citation modified). "A federal court 'must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim].'" Ali v. U.S. Dep't of State, 676 F. Supp. 3d 460, 466 (E.D.N.C. 2023)

(alterations in original) (quoting Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479-80 (4th Cir. 2005)). When deciding whether to dismiss for lack of subject matter jurisdiction, the court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Ultimately, the plaintiff bears the burden of establishing the court's subject matter jurisdiction. See, e.g., id.; Steel Co., 523 U.S. at 103-04. However, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is meant to "test[] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

6

In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegation "to raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 555, 570; see also Iqbal, 556 U.S. at 678. Thus, mere legal conclusions should not be accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## B. Whether the Court Has Subject Matter Jurisdiction over Salami's Claims

Defendants contend that the court lacks subject matter jurisdiction because Defendants have no clear duty to adjudicate Salami's Form I-130 visa petition. (Doc. 11 at 7.) Salami counters that the court has subject matter jurisdiction pursuant to the Mandamus Act and 5 U.S.C. § 702. (Doc. 13 at 2.) He also purports to quote Dae Hyun Kim v. Ashcroft, 340 F. Supp. 2d 384

7

(S.D.N.Y.), for the proposition that "[t]he APA imposes a clear, non-discretionary duty on USCIS to adjudicate immigration petitions in a reasonable time." (Id.) However, this quoted language never appears in the cited opinion.

The APA provides a "basic presumption of judicial review" of agency action. Lincoln v. Vigil, 508 U.S. 182, 190 (1993) (quoting Abbott Lab'ys v. Gardner, 387 U.S. 136, 140 (1967)). Under the APA's judicial review provision, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Accordingly, a court "shall . . . compel agency action unlawfully withheld or unreasonably delayed." Id. § 706(1). However, a court may not review agency action when such action "is committed to agency discretion by law." Id. § 701(a)(2).

"[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted). "[W]here an agency is not required to do something, [the court] cannot compel the agency to act – let alone to act faster." Gonzalez v. Cuccinelli, 985 F.3d 357, 366 (4th Cir. 2021) (emphasis omitted). In fact, "[j]ust like the traditional mandamus remedy from which [5 U.S.C. § 706(1)] is derived, claims to compel agency action are limited to

enforcement of a specific, unequivocal command, over which an official has no discretion." Lovo v. Miller, 107 F.4th 199, 211 (4th Cir. 2024) (alterations in original) (quoting City of New York v. U.S. Dep't of Def., 913 F.3d 423, 432 (4th Cir. 2019)). Accordingly, both the APA and the Mandamus Act "only permit[] federal courts to exercise jurisdiction if an agency has a clear duty to act." Id. at 216.

"To assess whether an agency is bound to act, [the court] first look[s] to the text of the relevant statutes and regulations." Id.; see Gonzalez, 985 F.3d at 367-69. In the context of immigration visa petitions, courts therefore start with the statutory provisions of the INA to determine whether USCIS is required to adjudicate the petition. See Lovo, 107 F.4th at 212; Gonzalez, 985 F.3d at 366; Ali, 676 F. Supp. 3d at 469.

Here, Salami bears the burden of establishing the court's subject matter jurisdiction. Yet he fails to provide any INA provision or related regulation that would indicate a clear duty on the part of Defendants to adjudicate Form I-130 visa petitions. Absent an INA provision on point, the Fourth Circuit has declined to impose a general, non-discretionary duty to adjudicate visa petitions within a reasonable period under 5 U.S.C. § 555(b). Contrast Gonzalez, 985 F.3d at 365-66, with Arabzada v. Donis, 725 F. Supp. 3d 1, 12 (D.D.C. 2024) ("Moreover, even if the INA did not provide a mandatory and nondiscretionary duty, courts in this

9

district have also concluded that § 555(b) of the 'APA imposes a general but nondiscretionary duty upon an administrative agency . . . .'" (quoting Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 293 (D.D.C. 2016))). Thus, because Salami has not demonstrated a clear duty on the part of Defendants based on any INA statute or regulation, the court cannot exercise jurisdiction under either the Mandamus Act or the APA. Cf. Alsharqawi v. Gonzales, No. 06-CV-1165, 2007 WL 1346667, at *3 (N.D. Tex. Mar. 14, 2007) (finding that the plaintiff established a non-discretionary duty on the part of USCIS to adjudicate Form I-130 visa petitions pursuant to 8 U.S.C. § 1154(b)).[3]

Finally, as for Salami's claim under the Declaratory Judgment Act, "[t]he Declaratory Judgment Act does not provide an independent basis for federal jurisdiction." Ibrahim v. Chertoff, 529 F. Supp. 2d 611, 615 (E.D.N.C. 2007) (citing Gibraltar, P.R., Inc. v. Otoki Grp., Inc., 104 F.3d 616, 619 (4th Cir. 1997)). Therefore, no declaratory relief can be considered when a court otherwise lacks subject matter jurisdiction. Id.

---

[3] Neither Salami's nor Defendants' briefings cite Alsharqawi or 8 U.S.C. § 1154(b). In relevant part, § 1154(b) provides: "After an investigation of the facts in each case, . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition and forward one copy thereof to the Department of State."

10

## C. Whether Salami's Claims Could Succeed on the Merits

Alternatively, even if the court had subject matter jurisdiction, Salami's request for mandamus and his APA claim would fail on their merits.[4]  Salami contends that USCIS has unreasonably delayed the adjudication of his Form I-130 petition.  (Doc. 13 at 2.)  On the other hand, Defendants argue pursuant to the so-called TRAC factors that no unreasonable delay is present here.[5]  (Doc. 11 at 9-11.)

"The standard for undue delay under the Mandamus Act . . . is identical to the APA standard."  Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020) (citing Norton, 542 U.S. at 63-64).  And while "there is no per se rule as to how long is too long to wait for agency action," In re Am. Rivers & Idaho Rivers United, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation modified), the Fourth Circuit has employed the TRAC factors, see Gonzalez, 985 F.3d at 375.  The six TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other

---

[4] Salami's third claim in his "emergency complaint" seeks a declaration "that Defendants' actions are unconstitutional, violate the INA, and are arbitrary and capricious."  (Doc. 1-1 at 12.)  Because such relief would require the court to find in Salami's favor pursuant to the Mandamus Act and the APA, it fails on the same grounds.

[5] See Telecomms. Rsch. & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984).

indication with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Gonzalez, 985 F.3d at 375 (quoting Telecomms. Rsch. & Action Ctr., 750 F.2d at 80). Although a district court "is not limited to these factors and is not required to use them[,] . . . the TRAC factors offer helpful guidance." Id.

The first two factors are "typically considered together," Milligan v. Pompeo, 502 F. Supp. 3d 302, 317 (D.D.C. 2020), and the first factor is the most important, In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008). Here, both factors favor Defendants. There is no statutory or regulatory timeframe within which USCIS must adjudicate Form I-130 petitions. Moreover, Salami

12

admits that the adjudication of his visa petition remains well within the Charlotte Field Office's 67.5-month completion timeline for eighty percent of cases. (Doc. 13 at 8.) This is particularly true given the added complexities associated with Salami's petition – namely, his arrest for indecent liberties with a minor, his criminal history related to marriage fraud, and his voluminous filing of family-sponsored petitions.

The fourth factor also weighs against Salami. In essence, he requests that the court move his wife's visa petition ahead of other pending cases. But "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved." Tate v. Pompeo, 513 F. Supp. 3d 132, 149 (D.D.C. 2021) (quoting Sarlak v. Pompeo, No. 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)). Because the court is hesitant to "erode the ability of agencies to determine their priorities" by pushing the adjudication of certain cases "by judicial fiat," id. at 150, this factor heavily favors Defendants.

As to factors three and five, which together "require the [c]ourt to consider [the plaintiff's] interests, health, and welfare," Memon v. Blinken, No. 22-0754, 2023 WL 1438396, at *3 (D.D.C. Feb. 1, 2023), Salami contends that his wife seeks the adjudication of the Form I-130 petition so that she can travel outside the United States to visit her ailing mother. (Doc. 1-1

13

at 8.) However, Defendants assert that the adjudication of the petition has no bearing on whether Salami's wife can depart the United States. (Doc. 11 at 15.) Further, as Defendants correctly point out, Salami and his wife are not themselves suffering any separation, because she is already in the United States. (Id.) And regardless, nearly every individual awaiting the adjudication of his or her visa petition presumably suffers some mental anguish. See Memon, 2023 WL 1438396, at *3 (finding that TRAC factors three and five weighed against the plaintiff in part because "tens of thousands of families around the world are currently suffering the exact same injury, many of whom are without the resources to attempt to skip the line"). Therefore, to the extent this factor favors Salami, it cannot overcome the three previously weighed factors.

Finally, as to the sixth factor, Salami has not alleged any bad faith in the adjudication of his visa petition. Accordingly, this factor is neutral. Based on the totality of the circumstances and consideration of the TRAC factors, even if the court had subject matter jurisdiction, Salami has not plausibly alleged any undue delay that would constitute a claim for relief under the Mandamus Act or the APA.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Defendants' motion to dismiss

14

(Doc. 10) is GRANTED and Plaintiff Salami's complaint is DISMISSED WITHOUT PREJUDICE.

                                          /s/   Thomas D. Schroeder
                                          United States District Judge

November 20, 2025